## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED SPACE ALLIANCE, LLC<br>1150 Gemini<br>Houston, Texas 77058<br><br>Plaintiff,<br><br>v.<br><br>HILDA L. SOLIS, sued in her official capacity,<br>Secretary,<br>United States Department of Labor,<br>200 Constitution Ave., NW<br>Washington, DC 20210;<br><br>UNITED STATES DEPARTMENT OF LABOR<br>200 Constitution Ave., NW<br>Washington, DC 20210;<br><br>PATRICIA A. SHIU, sued in her official capacity,<br>Director,<br>Office of Federal Contract Compliance Programs,<br>U.S. Department of Labor<br>Employment Standards Administration<br>Office of Federal Contract Compliance Programs<br>200 Constitution Ave., NW<br>Room C-3310<br>Washington, DC 20210;<br><br>OFFICE OF FEDERAL CONTRACT<br>COMPLIANCE PROGRAMS<br>U.S. Department of Labor<br>Employment Standards Administration<br>Office of Federal Contract Compliance Programs<br>200 Constitution Ave., NW<br>Room C-3310<br>Washington, DC 20210;<br><br>⎯⎯⎯⎯⎯⎯ Defendants. ⎯⎯⎯⎯⎯⎯ | **COMPLAINT**<br><br>Case No._____ |

## COMPLAINT

1.     This is an action under Section 702 of the Administrative Procedure Act

("APA"), 5 U.S.C. § 702, seeking judicial review of a Final Administrative Order ("the Final

Order") issued on behalf of the Secretary of Labor on April 11, 2011.

2.     The Final Order requires United Space Alliance, LLC ("United Space") to produce detailed compensation data to the Office of Federal Contract Compliance Programs ("OFCCP") within 30 days or have its federal contracts and subcontracts terminated and be declared ineligible for future government contracts and subcontracts.

3.     United Space seeks an immediate stay of the Final Order to preserve the status quo during this APA review action. United Space's primary business is work on government contracts and subcontracts, and it would suffer irreparable harm without issuance of a stay pending APA review.

4.     In addition to the relief specified in the prayer for relief below, United Space requests that the Court hold unlawful and set aside the Final Order as arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

## JURISDICTION

5.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 (Federal question jurisdiction) and the APA, 5 U.S.C. § 702 ("[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof"). This is an action for review of a Final Order issued under Executive Order 11,246.

## VENUE

6.     Venue is proper in this Court pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1), as the defendants reside in the geographical area included within the United States District Court for the District of Columbia.

## **PARTIES**

7.     United Space is a limited liability company organized under the laws of Delaware.  United Space's corporate headquarters is located at 1150 Gemini, Houston, Texas 77058.

8.     United Space's primary business is providing all aspects of processing, maintenance and operations for various NASA programs, including the Space Shuttle and International Space Station (ISS) programs.  Under the Space Program Operations Contract implemented October 1, 2006, United Space is NASA's primary industry partner in human space operations, including the day-to-day management of the Space Shuttle fleet and planning, training, and operations for the ISS.

9.     Defendant Hilda L. Solis, in her official capacity as Secretary of the Department of Labor ("the Secretary"), is a proper defendant to this action for review of the decision of the Department of Labor pursuant to 5 U.S.C. § 703.

10.     Defendant Department of Labor is a proper defendant to this action for review of the decision of the Department of Labor pursuant to 5 U.S.C. § 703.

11.     Defendant Patricia A. Shiu, in her official capacity as Director of the Office of Federal Contract Compliance Programs, Department of Labor, is a proper defendant to this action for review of the decision of the Department of Labor pursuant to 5 U.S.C. § 703.

12.     Defendant Office of Federal Contract Compliance Programs ("OFCCP"), is a proper defendant to this action for review of the decision of the Department of Labor pursuant to 5 U.S.C. § 703.

## BACKGROUND

### OFCCP's Regulatory Framework Governing Requests for Compensation Data

13.     Section 206 of Executive Order 11,246 provides that "[t]he Secretary of Labor may investigate the employment practices of any Government contractor or subcontractor to determine whether or not the contractual provisions specified in Section 202 of this Order have been violated. Such investigation shall be conducted in accordance with the procedures established by the Secretary of Labor."

14.     The Secretary of Labor has published regulations governing compliance evaluations at 41 C.F.R. § 60-1.20(a). In the Final Rule implementing the compliance evaluation procedures, the OFCCP explained that it "agrees that contractors should be apprised of how the agency intends to implement the proposed compliance evaluation procedures." This OFCCP statement was published at 62 Fed. Reg. 44,174, 44,180 (Aug. 19, 1997).

15.     The OFCCP also explained that "[t]he Federal Contract Compliance Manual ("FCCM") contains the policy guidance interpreting the Executive Order and regulations, as well as agency instructions for implementing the regulatory provisions. OFCCP's Compliance Manual currently describes the procedures for conducting compliance reviews." This OFCCP statement was published at 62 Fed. Reg. at 44,180.

16.     The OFCCP Scheduling Letter is a form letter sent to contractors to initiate a compliance evaluation. The Scheduling Letter contains an Itemized Listing that requests the same information from all contractors subject to a compliance evaluation.

17.     The OFCCP Scheduling Letter is subject to the Paperwork Reduction Act, 44 U.S.C. § 3501, *et seq*. ("PRA"). OFCCP sought and received OMB clearance for the Scheduling Letter under the PRA.

18.    Prior to 1999, OMB did not authorize OFCCP to collect compensation data from contractors as part of the Scheduling Letter.

19.    In 1998 and 1999, OFCCP communicated with OMB regarding collection of compensation data in the Scheduling Letter.

20.    During these 1998-1999 communications with OMB, OFCCP initially requested to collect the following information and data as part of the Scheduling Letter: "A current employee roster that includes all personnel. Provide name (may be coded), race, gender, salary grade or salary band, job title, hire date, date in current position, and current annual salary or hourly wage rate."

21.    OFCCP later revised its proposal and requested OMB approval for collection of the following information and data: "Please provide annualized compensation data (wages, salaries, commissions, and bonuses) by either salary range, rate, grade or level showing total number of employees by race and gender and total compensation by race and gender."

22.    OFCCP published a notice in the Federal Register regarding the proposed collection of compensation data in the Scheduling Letter.  This notice was published at 64 Fed. Reg. 54,056 (Oct. 5, 1999).

23.    In comments submitted to OFCCP in response to this notice, several commenters questioned the "practical utility" of the proposed compensation data request and raised concerns that the mere appearance of salary gaps between female and male compensation would trigger too many "false positives" and thereby subject employers to unnecessary scrutiny by the OFCCP.

24.    OMB asked OFCCP to address the comments and OFCCP responded: "[t]he 'practical utility' of having compensation data in advance is that it allows OFCCP to examine

observable disparities in compensation at given thresholds to determine which employer's compensation systems are more likely to reveal potential violations." OFCCP also explained in the response to OMB that: "[b]ecause of the preliminary nature of the analysis that would be based on the compensation data requested in item 8 it is unnecessary to add a question inviting the submission on additional material that the contractor thinks is necessary to explain its compensation system, as suggested by Morgan, Lewis."

25.     In the terms of clearance for PRA authorization for the Scheduling Letter dated July 30, 2002, OMB requested that OFCCP "review of the utility, burden, and method of analyzing compensation data required in Item 8 [of the Scheduling Letter]." In response to OMB's request, OFCCP conducted a study of the utility of the compensation data.

26.     OFCCP reported the results of the study and explained that it "uses the Item 11 data purely to determine whether OFCCP should investigate a contractor's compensation practices further, as a means of targeting and allocating the agency's investigative resources. OFCCP is not using Item 11 data to make any kind of determination of whether a violation has occurred." OFCCP published these statements at 70 Fed. Reg. 42,101, 42,101 (July 21, 2005) and 69 Fed. Reg. 13,909, 13,910 (Mar. 24, 2004).

27.     In the 2004 notice, OFCCP also reported that the agency requested additional compensation data in 50% of compliance evaluations. OFCCP published this report at 69 Fed. Reg. at 13,910. The OFCCP's Orlando district office requested additional compensation data in 60 to 70 of 120 desk audits conducted annually.

28.     Many of the letters OFCCP sent to contractors requesting additional compensation data stated: "While the desk audit results suggest possible compensation issues,

6

the results shouldn't be regarded as a finding of any problem with your compensation system.

The desk audit analysis is rudimentary, and is based on limited information."

29.     In the Supporting Statement submitted to OMB in July, 2004, OFCCP responded

to commenters as follows:

> OFCCP agrees with these commenters that additional guidance
> would be useful to clarify the text of Item 11 so that contractors
> have a better understanding of what compensation data they must
> submit to OFCCP.  Accordingly, OFCCP will issue a Directive
> which describes the Item 11 request in more detail and outlines
> standards to govern OFCCP's analysis of compensation data
> during the desk audit and follow-up requests to the contractor for
> additional compensation information.  OFCCP will publish this
> Directive on its web site.

30.     The FCCM does not address OFCCP's evaluation of the compensation data

OMB permitted OFCCP to request in the Scheduling Letter.  In particular, the FCCM was last

revised in November 1998, more than a year before OMB authorized OFCCP to request

compensation data in the Scheduling Letter.

31.     Instead, Chapter 2 of the FCCM discusses evaluation of the AAP workforce

analysis to determine whether to request additional compensation data during an on-site

compliance review.  District Director Rivera did not base his decision to request additional

compensation data on evaluation of United Space's workforce analysis.

32.     While "OFCCP traditionally has established procedures for investigating

compensation discrimination, as well as other forms of discrimination, through instructions for

its compliance officers contained in the OFCCP Federal Contract Compliance Manual (FCCM),

directives and other staff guidance materials . . . . OFCCP changed its approach to investigating

compensation discrimination in 2006.  On June 16, 2006, OFCCP published in the Federal

Register two final guidance documents related to identifying compensation discrimination

under Executive Order 11246 that contained interpretations of OFCCP regulations."  This

7

OFCCP statement was published at Notice of Proposed Rescission, 76 Fed. Reg. 62, 62-63
(Jan. 3, 2011).

33.     The OFCCP Compensation Standards were developed after notice and comment
procedures and published in the Federal Register at Notice, *Interpreting Nondiscrimination
Requirements of Executive Order 11,246 with Respect to Systemic Compensation
Discrimination*, 71 Fed. Reg. 35,124-141 (June 16, 2006). The OFCCP explained that these
Compensation Standards established a "rigid procedure for investigating and analyzing
systemic compensation discrimination cases . . . to be followed by OFCCP compliance officers
when conducting investigations of systemic compensation discrimination in all cases." This
OFCCP statement was published at 76 Fed. Reg. at 62-63.

34.     The OFCCP explained in the Compensation Standards that, "[u]nder the tiered-
review approach, OFCCP uses pay grade (or other aggregated compensation) information
submitted in response to Item 11 of OFCCP's Scheduling Letter. Once it receives the Item 11
data, OFCCP conducts a simple comparison of group average compensation by pay grade or
other aggregation unit by which the employer has provided the data. If this comparison
indicates a significant disparity, OFCCP will ask the contractor for employee-specific
compensation and personnel information." This OFCCP statement was published at 71 Fed.
Reg. at 35,125.

35.     District Director Rivera did not determine that any of the average pay
differences in United Space's Item 11 data showed a "significant disparity."

36.     The OFCCP distributed internally and later published an Active Case
Management ("ACM") Directive 285, which was signed by the Director of OFCCP and was
binding on OFCCP personnel. ACM Directive 285 references a second Directive and instructs

8

OFCCP personnel to "[f]ollow FCCM 2O and 2P as amended by the April 23, 2007 Directive entitled 'Analysis of Contractor Compensation Practices at the Desk Audit Stage of a Compliance Evaluation.'"

37.    The ACM Directive was published on OFCCP's website. The ACM Directive provided that it "institutionalizes" the "process and procedure for conducting non-construction compliance evaluations . . . .'"

38.    Upon information and belief, the April 23, 2007 Directive was ADM Notice/Compensation Transmittal Number 275.

39.    Upon information and belief, the 2007 Directive was effective until formally superseded or rescinded, and it superseded all other guidelines previously issued for conducting a desk audit analysis of Item 11 compensation data, including any part of Chapter 2 of the FCCM that was inconsistent with the 2007 Directive.

40.    The 2007 Directive was in effect during October and November, 2009. Upon information and belief, it was superseded in June, 2010.

41.    Upon information and belief, the 2007 Directive established OFCCP procedures for analyzing contractor compensation data and requesting additional compensation data during the desk audit stage of a compliance evaluation.

42.    Upon information and belief, the 2007 Directive provided uniform standards for evaluating the compensation data provided by a contractor in response to Item No. 11 of the Scheduling Letter. The procedures contained in the 2007 Directive were mandatory on OFCCP field personnel.

43.    The OFCCP published on the agency website FAQs informing contractors "what to expect" during a desk audit review of their Item 11 data:

9

### Has OFCCP developed procedures for conducting a desk audit of a contractor's compensation practices?

Each of OFCCP's regional offices uses the same basic procedures for conducting a desk audit review of a contractor's compensation practices. Generally speaking, during a desk audit, the agency will examine the following three criteria when evaluating a contractor's compensation practices:

- Whether, for at least one pay division, there is a specified difference in average compensation between the groups being compared and, if so, whether at least one group appears to be adversely affected.

- After combining the pay divisions meeting the above condition, whether the number of employees in the non-favored group is greater than a specified number and represents a specified percentage of the total employees in that group in the overall workforce.

- Whether the overall percentage of the group most adversely affected in the combined pay divisions is larger, by a specified amount, than the overall percentage of the other groups adversely affected.

The specific thresholds used in each of the three criteria above are not static, but rather are subject to change as OFCCP continues to evaluate its targeting methodology.

The OFCCP published this FAQ at http://www.dol.gov/ofccp/regs/compliance/

faqs/emprfaqs.htm.

44.    The FAQs quoted in Paragraph 43 identify an analysis of the Item 11

compensation data that Director Rivera called the "threshold analysis." United Space's Item 11

data passed this threshold analysis.

45.    The OFCCP distributed the 2007 Directive to field managers including district

directors across the country, along with a spreadsheet that contained the threshold analysis and

the specific thresholds used in that analysis.

46.    Upon information and belief, the 2007 Directive or an appendix of that directive

contained text that was similar if not identical to the text of the FAQ quoted in Paragraph 43

10

above. The 2007 Directive also contained the specific thresholds that were referenced generally in the FAQs.

47.     The 2007 Directive does not reference or discuss the "pattern analysis" described by Director Rivera in the hearing in the OFCCP enforcement action against United Space.

48.     The 2007 Directive does not reference or discuss the 30 and 5 Refinement described by Director Rivera in the hearing in the OFCCP enforcement action against United Space.

49.     Upon information and belief, the 2007 Directive provides that OFCCP may continue an analysis of a contractor's compensation practices if there is anecdotal evidence that suggests a pattern or practice of compensation discrimination.

50.     Director Rivera did not base his request for additional compensation data from United Space on anecdotal evidence that suggested a pattern or practice of compensation discrimination.

51.     Upon information and belief, the 2007 Directive provides that OFCCP may continue an analysis of a contractor's compensation practices even if the Item 11 data passes the threshold test only where there is "other evidence of discrimination" in addition to analysis of Item 11 data, such as direct or circumstantial evidence that gender, race or ethnicity played a role in setting compensation.

52.     Director Rivera based his request for additional compensation data from United Space entirely on analysis of the Item 11 data and not on "other evidence of discrimination."

53. Upon information and belief, the 2007 Directive provides that the compensation review portion of the compliance evaluation should be closed if the Item 11 data passes the threshold analysis.

54. OFCCP has attempted to justify District Director Rivera's request for additional compensation data under the Fourth Amendment by asserting specific evidence of an existing violation, not by alleging that the request was based on neutral application of a neutral administrative plan.

55. Upon information and belief, the 2007 Directive contained guidelines for requesting additional compensation data and identifies the same 12 data items listed in an FAQ published on the agency website at http://www.dol.gov/ofccp/regs/compliance/faqs/emprfaqs.htm. Upon information and belief, the 2007 Directive also provided a sample request letter as an appendix that contained those same 12 data items.

## The Orlando District Office's 2002-2006 Audit of United Space's Cape Canaveral Facility

56. OFCCP conducted an extensive compliance evaluation of United Space's compensation practices at its Cape Canaveral facility during a compliance evaluation that began in 2002 and ended in December 2006. Then-OFCCP Orlando Assistant District Director Miguel A. Rivera, Jr. was one of OFCCP's primary points of contact with United Space during the 2002-2006 evaluation.

57. During OFCCP's 2002-2006 evaluation, OFCCP requested and United Space provided extensive compensation data and documents. OFCCP also requested over 200 manager and employee interviews and ultimately conducted over 100 such interviews.

58.     On December 21, 2006, the Orlando District Office closed the compliance

evaluation without further action. In the letter notifying USA that the audit was closed, then

Orlando District Director Alice Webster wrote that, "[a]lthough we have concerns about the

initial pay argument and the formation of the SSEGs, we have elected to close the compliance

evaluation and take no further action at this time. . . . If USA is selected for a compliance

evaluation in the future, we will review these issues consistent with OFCCP procedures and

policies."

### The Orlando District Office's Decision to Request Additional Compensation Data

59.     By Scheduling Letter dated August 7, 2009, OFCCP notified United Space that

its Cape Canaveral facility had again been selected for a compliance evaluation. The

Scheduling Letter requested compensation data in Item 11 of the Itemized Listing.

60.     On October 14, 2009, United Space submitted the Item 11 data by e-mail to

Compliance Officer ("CO") Teresi.

61.     The Item 11 submission provided the number of males and females and average

pay for males and females for each Affirmative Action Program ("AAP") job group. AAP job

groups encompass different job titles as reflected in the Workforce Analysis and Job Group

Analysis that United Space submitted as part of the AAP to OFCCP.

62.     CO Teresi received United Space's Item 11 compensation data and inserted the

data into a spreadsheet provided by OFCCP's National Office ("NO").

63.     The NO spreadsheet contained formulas developed by OFCCP statisticians in

the NO.

64.     The formulas calculated what District Director Rivera called a "threshold

analysis."

13

65.     The threshold analysis compared average pay differences between males and females within each AAP job group, and used thresholds developed by the OFCCP statisticians under which small differences were not used to identify males or females as "affected."

66.     The threshold analysis also considered the percentage of females "affected" by pay differences above the threshold and compared the percentages of males and females in these affected categories.

67.     The NO spreadsheet indicated that United Space's Item 11 data passed the OFCCP's threshold analysis.

68.     After learning that United Space's Item 11 data passed the threshold analysis, Director Rivera proceeded to apply his own "pattern analysis." The pattern analysis compared average pay differences within AAP job groups, and was similar to the threshold analysis, except that it did not have any thresholds and considered small differences (as small as a $3.18 difference in annual salaries) to be meaningful.

69.     Upon information and belief, the pattern analysis was used only in OFCCP's Orlando district.

70.     Director Rivera also did an alleged refinement of the analyses to look at only AAP job groups that had more than 30 employees and at least 5 males and 5 females (the "30 and 5 Refinement").

71.     During 2008 and 2009, Director Rivera used this 30 and 5 Refinement referenced in Paragraph 70 on the Item 11 data for only one employer, United Space.

72.     Based on his subjective assessment of the pattern analysis, Director Rivera decided to send a request for additional compensation data.

73.    In response to OFCCP's requests for additional compensation data, United Space submitted letters and emails asking Director Rivera to explain the basis for the request for additional data.

74.    In response to these letters and e-mails, Director Rivera never informed United Space that its data passed the threshold test.  Director Rivera also did not advise United Space that the basis for the request was the pattern analysis.

75.    In response to United Space's letters and e-mails referenced in Paragraph 73, Director Rivera did not identify differences against women as the basis for the request. OFCCP's Show Cause Notice, dated April 9, 2010, was the first time that OFCCP informed United Space that the basis for the request for additional compensation data was pay difference against women.

## OFCCP Actions to Eliminate the Gender Pay Gap

76.    OFCCP's regulations expressly require contractors to develop affirmative action programs for women, but not for men.  41 C.F.R. § 60-2.10(a)(1).

77.    In response to a FOIA request, the OFCCP's Mid-Atlantic Region indicated that OFCCP requested additional compensation data to examine disparities against males in only one compliance evaluation in the region from 2006-2010.

78.    Director Rivera requested additional compensation data because of differences against women.  In the Item 11 data submitted by United Space, there were twelve AAP job groups in which males made less than females.  In United Space's Item 11 data, there are more men in AAP job groups where women made 5% or more on average than men than there are women in AAP job groups where men made 5% or more on average than women.

79.    OFCCP published remarks by OFCCP Director Patricia Shiu on the agency's website at http://www.dol.gov/ofccp/addresses/Director_address_to_NILG_Aug042010.htm:

> It is no secret that the wage gap persists between men and women, and that this gap is even higher for women of color. Despite the fact that President Kennedy signed the Equal Pay Act into law 47 years ago, with the express intention of closing this gap, the gap remains—some 47 years later.
>
> \*　　　\*　　　\*
>
> I had the distinct pleasure of hearing Lilly Ledbetter speak at a White House Middle Class Task Force event where Vice President Biden announced many of the inroads that the President, his Administration, and Secretary Hilda Solis and the Department of Labor are making to level the playing field for workers.

80.     OFCCP explained in the FY2012 Congressional Budget Justification published

at http://www.dol.gov/dol/budget/2012/PDF/CBJ-2012-V2-04.pdf that:

> The pay gap between men and women persists even after the passage of the Equal Pay Act 47 years ago. There is currently a 23% pay disparity between men and women, and it is even greater among African-American and Hispanic women. The President created the National Equal Pay Enforcement Taskforce to address this issue and eliminate this persistent pay gap.

81.     During the hearing before the ALJ, United Space offered into evidence "An

Analysis of Reasons for the Disparity in Wages Between Men and Women," a 2009 study of

the gender pay gap that was developed by OFCCP.  This study was published on the agency's

website at http://www.dol.gov/esa/ofccp/ and is currently published on the contractor's website

at http://www.consad.com/content/reports/Gender%20Wage%20

Gap%20Final%20Report.pdf.  United Space also offered "Women's Pay," a 2009 GAO report

on the gender pay gap in the federal workforce.  This report is published on GAO's website at

http://www.gao.gov/new.items/d09279.pdf.

82.     The studies referenced in Paragraph 81 report that there is an empirical average

pay difference between men and women in both the private sector and federal workforces.

83.     Upon information and belief, based on the empirical gender pay gap, an analysis

of raw average pay differences within AAP job groups with no thresholds or very low

thresholds will be expected to show average pay differences against females for most federal contractors and subcontractors.

84.     Upon information and belief, because of the empirical gender gap, the pattern analysis and other analyses with low or no thresholds will flag nearly every federal contractor or subcontractor for follow-up investigation of pay differences against women.

85.     Upon information and belief, the use of analyses with low or no thresholds to trigger extensive investigations will place undue pressure on employers to make gender-based pay adjustments in violation of the Equal Protection component of the Due Process Clause.

### OFCCP Assurances Regarding Selection of Contractors for Compliance Evaluations

86.     At the time United Space submitted its AAP and requested materials in response to the Scheduling Letter to OFCCP in August, 2009, the agency published (and continues to publish) the following FAQs on its website which advise the regulated community that initial selections for compliance evaluations are based on a neutral application of an neutral administrative scheme:

> **How does OFCCP select contractors establishment for a compliance evaluation?**
>
> **OFCCP's Federal Contractor Selection System (FCSS) is an administratively neutral selection system** that uses multiple information sources and analytical procedures to identify Federal contractor establishments for evaluation. The FCSS process may include the use of EEO-1 reports; development of threshold requirements, such as establishment size; random sampling; analysis of external Federal contract databases to better establish jurisdictional coverage; and a mathematical model that ranks Federal contractor establishments based on an indicator of potential workplace discrimination. OFCCP also schedules evaluations based on a variety of other factors, such as contract award notices, directed reviews, as a result of conciliation agreement monitoring or individual or class complaints, or as part of the agency's Corporate Management Compliance Evaluation (CMCE) or Functional Affirmative Action Plan (FAAP) initiatives.

**How does OFCCP plan to schedule the evaluations among the selected establishments?**

Once identified by the FCSS, establishments selected for evaluation appear on a computer-generated list developed by the OFCCP National Office. This list has the contractor establishments that each Regional/District Office is to schedule during the current scheduling cycle. When an office is ready to schedule an establishment for evaluation, it accesses a computer system – maintained by the OFCCP National Office – that releases to that office the name of the very next establishment on the list. The establishments are released one name at a time in the specific order determined by the National Office.

To ensure consistent and fair application of OFCCP's administratively neutral selection process, an office only has sequential access to its list and cannot schedule a particular contractor establishment before taking action on prior candidates. When an office gets the name of a contractor establishment, it must note in the computer system whether it will schedule the establishment for evaluation and, if so, must enter the date of the selection. If an office rejects the establishment for evaluation, it must identify the reason for the rejection. Offices must enter the above information regarding the selection or rejection before the system permits an office to access the next name on the list. All of this information is then recorded in an electronic database maintained by OFCCP's National Office.

These statements are published at http://www.dol.gov/ofccp/regs/compliance/faqs/fcssfaqs.htm.

## Expedited Proceedings Before the Administrative Law Judge

87.     On November 9, 2010, OFCCP filed with the Department of Labor's Office of

Administrative Law Judges an Administrative Complaint against United Space.  In the

Administrative Complaint, OFCCP alleged that United Space wrongfully failed to provide

requested compensation data and to allow OFCCP to perform an on-site compliance review at

the Cape Canaveral facility.

88.     On November 29, 2010, United Space timely answered and moved for removal

from the expedited hearing procedures.

18

89.     On December 1, 2010, the parties jointly moved for the appointment of a settlement judge and agreed, subject to the ALJ's approval, to stay the date by which OFCCP was required to file its response to United Space's Motion to Remove the Administrative Complaint from the Expedited Hearing Procedures.

90.     The ALJ granted this motion on December 7, 2010 in Pre-hearing Order #1 and appointed settlement Judge Alan Bergstrom. The parties filed, and the ALJ granted, three joint motions for extensions of time while settlement negotiations continued. Other than these motions for extension of time, the parties filed no further pleadings or motions while they engaged in good faith settlement negotiations.

91.     The parties notified the ALJ on January 19, 2011 that efforts to settle were unsuccessful.

92.     On January 20, 2011, in Pre-hearing Order #3, the ALJ granted Plaintiff's request for an expedited hearing and denied United Space's request to remove the proceedings from the expedited hearing procedures.

93.     On January 21, 2011, United Space filed a motion for leave to amend its answer, an amended answer, and for reconsideration of the ALJ's Pre-hearing Order #3 and to be removed from the expedited hearing procedures.

94.     On January 22, 2011, United Space moved for leave to depose District Director Rivera and propounded a Request for Admissions.

95.     By Pre-hearing Order #4 dated January 25, 2011, the ALJ scheduled the hearing for February 14 and 15, 2011.

96.     In Pre-hearing Order #5, dated January 25, 2011, the ALJ granted United Space's motion to depose District Director Rivera but denied United Space's request that

District Director Rivera bring a copy of the 2007 Directive described in Paragraphs 38-42, 46-49, 51, 53, and 55 above. In Pre-hearing Order #5, the ALJ also denied United Space's motion for reconsideration of Pre-hearing Order #3 and to be removed from the expedited hearing procedures.

97.     On January 31, 2011, United Space moved for reconsideration of the Court's Pre-hearing Order #5 denying its request that District Director Rivera bring a copy of the 2007 Directive to the deposition or hearing. OFCCP opposed this motion for reconsideration, and the ALJ denied it in Pre-hearing Order #7, dated February 4, 2011. The ALJ also seemed to determine that the 2007 Directive was irrelevant, explaining "[t]he issue is extremely limited" and "OFCCP will rely directly on data obtained from the initial desk audit rather than evidence that calculations using this data satisfied or met some standard or threshold described in any internal documents to meet [sic] burden."

98.     OFCCP moved for a protective order to limit the scope of District Director Rivera's deposition, which United Space opposed. The ALJ granted in Pre-hearing Order #7, dated February 4, 2011, OFCCP's motion for a protective order barring United Space from asking District Director Rivera about OFCCP internal directives or procedures.

99.     OFCCP moved for clarification of the issues for the hearing and requested that the ALJ not require OFCCP to show that it followed a neutral administrative plan in selecting United Space for the initial desk audit. United Space opposed this motion, which the ALJ granted in Pre-hearing Order #6, dated February 4, 2011, holding that United Space had consented to the desk audit by providing the requested materials to OFCCP.

100.    Pursuant to OFCCP's Rules of Practice, the parties exchanged witness and exhibit lists. United Space noticed the appearances of Miguel A. Rivera, Jr., CO Andrew

Teresi, and OFCCP employee Margaret Nelson on February 7, 2011.  Ms. Nelson is an OFCCP

program analyst who has access to OFCCP's data systems and could pull requested information

regarding the number of compliance evaluations in which OFCCP requested additional

compensation data and the number of such requests that were based on pay differences against

males.  OFCCP objected to these notices of appearance.

      101.    In Pre-hearing Order #9, dated February 4, 2011, the ALJ ordered that the parties

could not file any further motions before the hearing.

      102.    United Space filed for leave to file a motion to compel OFCCP to produce the

testimony of CO Teresi and OFCCP employee Margaret Nelson at the hearing.  The ALJ

granted United Space leave to file the motion in Pre-hearing Order #10, dated February 10,

2011.  United Space filed its motion to compel, which OFCCP opposed.  The ALJ denied

United Space's motion to compel the testimony of CO Teresi and OFCCP employee Margaret

Nelson in Pre-hearing Order #11, dated February 11, 2011, but required OFCCP to have CO

Teresi on stand-by to testify telephonically at the hearing.

      103.    This action proceeded to a hearing on February 14, 2011 and February 15, 2011,

pursuant to 41 C.F.R. § 60-30.31, *et seq*. (setting the rules for expedited hearing procedures).

      104.    During the hearing, counsel for United Space made several additional requests

for OFCCP to produce the 2007 Directive.  The ALJ refused to require OFCCP to produce the

2007 Directive.

      105.    The ALJ allowed Director Rivera to testify that the 2007 Directive did not

expressly provide that he could not use the pattern analysis.  The ALJ would not permit United

Space to ask about the 2007 Directive, sustaining OFCCP's trial counsel's objection in the

following colloquy:

Q. This language – essentially, was this threshold test contained in the 2007 directive?

MR. BLACK [Counsel for OFCCP]: Your Honor, we object. That's the internal – internal directive. To the extent we want to get into the details of what it said, I'm not understanding the relevance.

MR. DOYLE [Counsel for United Space]: Your Honor –

ADMINISTRATIVE LAW JUDGE SARNO: I've already ruled you don't get into the internal documents.

MR. DOYLE: Your Honor, I'm not asking for any thresholds which are the secret part of it. This is already published. I'm just asking: Is what's already public also contained in that document?

MR. BLACK: Is the question whether these types of analysis are what's contained in the document? Because we already have lots of testimony as to what the threshold –

ADMINISTRATIVE LAW JUDGE SARNO: I don't think we have to get into this. I'm going to sustain the objection.

106.    The ALJ refused to allow the testimony of CO Teresi, ruling that his testimony would be cumulative. Director Rivera testified that CO Teresi ran both of the analyses of United Space's Item 11 data and had multiple discussions with Director Rivera about the analyses and results.

107.    Director Rivera personally prepared the only spreadsheet that contained the pattern analysis. Director Rivera discarded the spreadsheet because he "didn't necessarily see it as a document, so much as using a spreadsheet instead of a calculator."

108.    In discarding the spreadsheet, Director Rivera violated The Records Disposal Act, 44 U.S.C 3301, *et seq*. The ALJ allowed Director Rivera to testify about the content of the spreadsheet used to conduct the pattern analysis.

109.    The ALJ refused to compel OFCCP to produce any of the actual spreadsheets used to analyze United Space's Item 11 compensation data.

110.    The ALJ refused to require OFCCP to answer United Space's Request for Admissions. The ALJ's scheduling order precluded United Space from serving requests for admissions so that answers would be due in time for the hearing.

111.    The ALJ refused to admit into evidence and ruled irrelevant a study developed for OFCCP regarding the gender pay gap and a GAO report on the gender pay gap in the federal workforce.

112.    During his introductory remarks opening the hearing, the ALJ ruled *sua sponte* that no post-hearing briefs would be permitted. Upon information and belief, in every other case brought under the OFCCP expedited hearing procedures, the ALJ permitted post-hearing briefs.

113.    The ALJ repeatedly refused to remove the proceedings from the expedited hearing procedures, which limited the types of discovery available to United Space.

114.    The only discovery that the ALJ permitted United Space to obtain was the deposition of District Director Rivera.

115.    The ALJ issued his Recommended Decision and Order ("RD&O") on February 28, 2011. In the RD&O, the ALJ recommended that United Space "comply with the desk audit within thirty days of the ARB's Final Decision" or have its present federal contracts cancelled and be debarred from future federal contracts until it complies with the ARB's order.

### Proceedings Before the Administrative Review Board

116.    United Space filed Exceptions to the RD&O on March 10, 2011, pursuant to 41 C.F.R. § 60-30.36.

117.    In a Notice of Case Closing issued April 11, 2011, the General Counsel of the Administrative Review Board ("ARB") stated that the ARB did not issue a Final Decision and

Order within thirty (30) days after the time for filing exceptions had expired and, therefore by operation of the expedited hearing procedures, the ALJ's RD&O became the Final Administrative Order ("the Final Order").

118. United Space seeks relief herein from the Department of Labor's Final Order pursuant to the APA, 5 U.S.C. §§ 702-706.

## CLAIMS FOR RELIEF

### COUNT I

### OFCCP's Request for Additional Compensation Data Violated the Fourth Amendment

119. United Space realleges and incorporates by reference the allegations contained in paragraphs 1-118 of this Complaint as if fully set forth herein.

120. The Secretary erroneously ruled in the Final Order that OFCCP met its burden under the Fourth Amendment to justify the agency's request for detailed compensation data and an on-site review to obtain the requested data.

121. With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

122. Under the Fourth Amendment, OFCCP must have had probable cause to request the additional compensation data. *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 320 (1978). Administrative probable cause is established when either: (a) the request was based on "specific evidence of an existing violation" or (b) the agency requested the data according to "reasonable legislative or administrative standards," including a showing that the request was pursuant to an administrative plan containing specific neutral criteria. *Id.*; *United States v. New Orleans Pub. Serv., Inc.*, 723 F.2d 422, 426 (5th Cir. 1984).

123.    OFCCP's neutral administrative plan under which it justified requests for
compensation data from, upon information and belief, thousands of contractors during 2006-
2010 was the "threshold analysis" described in the FAQs quoted in Paragraph 43 above.
Because United Space's Item 11 data passed the threshold test, OFCCP attempted to justify the
request for additional compensation data under the specific evidence of an existing violation
standard.

124.    The ALJ did not rule that Director Rivera's pattern analysis met the threshold to
constitute "specific evidence of an existing violation." *Barlow,* 436 U.S. at 320 & n.16.

125.    In the RD&O, the ALJ explained: "District Director was not using any
rudimentary non-statistical test to charge Defendant with any violations. Rather, he was merely
attempting to gather information to conduct a regression analysis before making any decision
with regard to determining whether the Defendant should be charged with any violations."
Similarly, during the expedited hearing, the ALJ explained:

> They're not claiming this is specific evidence of violations. That's
> why they've requested more information from your client,
> Counsel. They're not here to show specific evidence of violations,
> or they would have charged them with violations.

126.    The ALJ applied the wrong legal standard. "[T]he evidence of a specific
violation required to establish administrative probable cause, while less than that needed to
show a probability of a violation, must at least show that the proposed inspection is based upon
a reasonable belief that a violation has been or is being committed." *West Point-Pepperell, Inc.
v. Donovan,* 689 F.2d 950, 958 (11th Cir. 1982); *see also, e.g., Marshall v. Horn Seed Co.*, 647
F.2d 96, 102-03 (10th Cir. 1981) ("[T]here must be some plausible basis for believing that a
violation is likely to be found . . . [t]he facts offered must be sufficient to warrant further
investigation or testing.").

127.    Instead of ruling on how the subjective and rudimentary pattern analysis

provided a reasonable belief that systemic pay discrimination has been or is occurring at the

Cape Canaveral facility, the ALJ simply ruled that Director Rivera had "broad discretion" and

that his actions were "reasonable."

128.    The ALJ also failed to address the fact that the outcome of the pattern analysis is

entirely subjective. Director Rivera testified as follows:

> Q: Now, this additional calculation on the bottom here on
> Plaintiff's Exhibit 5, where you look at the groups, is there any
> threshold for failing that part of the pattern analysis?
>
> A: Not necessarily, no.
>
> Q: You just look at these data results and make a decision based
> on what you see?
>
> A: Yes.

129.    The subjective pattern analysis conflicts with the overarching concern of the

Fourth Amendment: that the decision to search not be based on the unbridled discretion of the

local enforcement officials in the field. *See, e.g.*, *New York v. Burger*, 482 U.S. 691, 711

(1987) (statutory standards adequately substitute for a warrant under the Fourth Amendment

because the standards ensure "that the inspections to which he is subject do not constitute

discretionary acts by a government official"); *Donovan v. Dewey*, 452 U.S. 594, 604 (1981);

*Barlow*, 436 U.S. at 323.

130.    Accordingly, Defendants have violated APA Section 706 and the Fourth

Amendment.

## COUNT II

### OFCCP's Initial Selection of United Space
### for a Compliance Evaluation Violated the Fourth Amendment

131.    United Space realleges and incorporates by reference the allegations contained in

paragraphs 1-130 of this Complaint as if fully set forth herein.

132.   The Secretary erroneously ruled in the Final Order that United Space consented to the initial selection for a compliance eyaluation merely by submitting its AAP and support materials to OFCCP in response to the Scheduling Letter.

133.   With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

134.   "[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).

135.   The ALJ did not apply this legal standard, but ruled that United Space consented to the initial selection without permitting any discovery, conducting any hearing, or considering any facts that the compliance evaluation was improperly initiated.

136.   "A search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Bumper v. North Carolina*, 391 U.S. 543, 548-49 (1968).  Thus, consent cannot be used to justify selection for a compliance evaluation that was otherwise improperly initiated under the Fourth Amendment.

137.   The Secretary erroneously ruled that United Space consented to the initial selection for audit.  Accordingly, Defendants have violated APA Section 706 and the Fourth Amendment.

## COUNT III

### OFCCP's Request for Additional Compensation Data
### Contrary to Agency Binding Norms Violated The APA

138.    United Space realleges and incorporates by reference the allegations contained in paragraphs 1-137 of this Complaint as if fully set forth herein.

139.    With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

140.    The Secretary erroneously ruled in the Final Order that OFCCP did not violate the APA by not adhering to the OFCCP's Systemic Compensation Discrimination Standards, Active Case Management Directive and 2007 Compensation Directive, together with the FAQs and threshold analysis.

141.    Under the APA, "an agency pronouncement will be considered binding as a practical matter if it either appears on its face to be binding, . . . or is applied by the agency in a way that indicates it is binding." *General Elec. Co. v. EPA*, 290 F.3d 377, 383 (D.C. Cir. 2002) (citation omitted); *see also, e.g.*, *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1021 (D.C. Cir. 2000).

142.    Together, the OFCCP Compensation Standards, the ACM and 2007 Compensation directives, the FAQs and the threshold analysis constitute binding norms from which OFCCP is not free to deviate under the APA.

143.    The Secretary thus erred in finding that OFCCP district directors have "broad discretion" to develop their own analytical techniques, because this "broad discretion" is plainly inconsistent with Executive Order 11,246, the OFCCP regulations, and the OFCCP directives.

144. Accordingly, Defendants have violated 5 U.S.C. §§ 553 and 706.

## COUNT IV

### OFCCP's Allegation That United Space
### Wrongfully Refused to Provide Additional Compensation Data Violates
### the APA Publication and Due Process Notice Requirements

145. United Space realleges and incorporates by reference the allegations contained in paragraphs 1-144 of this Complaint as if fully set forth herein.

146. With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

147. The Secretary erroneously ruled in the Final Order that OFCCP did not violate the APA publication requirement and the notice requirements of the Due Process Clause of the Fifth Amendment. The so-called pattern analysis was never disclosed to federal contractors and contradicted the agency's own publications regarding the threshold analysis and requests for additional compensation data. The Secretary's Final Order thus finds that United Space violated Executive Order 11,246 by refusing to produce the requested compensation data based on a new standard that was never before published and which contradicts the published standards.

148. Accordingly, Defendants have violated 5 U.S.C. §§ 552 and 706 and the due process clause of the Fifth Amendment.

29

## COUNT V

### OFCCP's Request for Additional Compensation Data
### Based on Small Average Pay Differences Against Women
### Violates the Equal Protection Component of the Due Process Clause

149.    United Space realleges and incorporates by reference the allegations contained in paragraphs 1-148 of this Complaint as if fully set forth herein.

150.    With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

151.    The Secretary erroneously ruled in the Final Order that administrative proceedings before the ALJ was not the appropriate forum for United Space's argument that OFCCP's actions violated the Equal Protection component of the Fifth Amendment Due Process Clause.

152.    OFCCP's focus on simple average pay differences against women with no or low thresholds subjects federal contractors like United Space to extensive OFCCP investigations that can be avoided only by making pay adjustments based on gender. *See MD/DC/DE Broadcasters Ass'n v. FCC*, 236 F.3d 13, 22 (D.C. Cir. 2001) (holding unconstitutional an FCC rule requiring licensees to achieve a broad outreach in their recruiting efforts because it created official pressure upon broadcasters to recruit minority candidates, thus creating a race-based classification that was not narrowly tailored to support a compelling governmental interest).

153.    Accordingly, Defendants have violated 5 U.S.C. § 706 and the equal protection component of the due process clause of the Fifth Amendment.

30

## COUNT VI

### OFCCP's Request for Additional Compensation Data
### Violates the Paperwork Reduction Act, 44 U.S.C. § 3501 *et seq.*

154.    United Space realleges and incorporates by reference the allegations contained in paragraphs 1-153 of this Complaint as if fully set forth herein.

155.    With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

156.    The Secretary erroneously ruled in the Final Order that OFCCP did not violate the PRA, 44 U.S.C. § 3501, *et seq*. and particularly 44 U.S.C. § 3512(a), even though OFCCP circumvents the OMB clearance process designed to protect federal contractors like United Space from overly burdensome and unjustified data collections.

157.    The PRA defines "collection of information" as a request for "answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons, other than agencies, instrumentalities, or employees of the United States." *Id.* § 3502(3)(A)(1). OFCCP sends a form letter, which does not bear a valid OMB control number, to request additional compensation data in more than half of its compliance evaluations.

158.    Under the PRA, "no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if . . . the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter." *Id.* § 3512(a). The OFCCP request for additional compensation data

based on the pattern analysis or other analysis with low thresholds is a bootleg information collection in violation of the PRA, and United Space was not required to answer it.

159.    The Secretary erred in finding that OFCCP's request was an exempt individual investigation, because the pattern analysis or other analyses with no or low thresholds will trigger a request for additional pay data and the request was a form letter sent to thousands of other contractors.

160.    Accordingly, Defendants have violated 5 U.S.C. § 706 and the PRA.

## COUNT VII

## OFCCP's Initial Audit Selection and Request for Additional Compensation Data Constitute Improper Prosecution

161.    United Space realleges and incorporates by reference the allegations contained in paragraphs 1-160 of this Complaint as if fully set forth herein.

162.    With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

163.    The Secretary erroneously approved the ALJ's refusal to permit United Space to conduct discovery to obtain evidence to support its claim that Director Rivera's decision to select United Space for an audit, and his subsequent request for additional compensation data, were motivated by United Space's exercise of its due process right to counsel and First Amendment right to petition during the prior audit of the same facility. Director Rivera's actions constitute "vindictive prosecution" in violation of the due process clause of the Fifth Amendment. *See United States v. Meyer*, 810 F.2d 1242, 1245-46 (D.C. Cir. 1987), *cert. denied*, 485 U.S. 940 (1988); *see also United States v. Goodwin*, 457 U.S. 368, 372 (1982).

164. Accordingly, Defendants have violated 5 U.S.C. § 706 and the due process clause of the Fifth Amendment.

## COUNT VII

### The ALJ's Discovery and Evidentiary Rulings Violated The APA and Due Process

165. United Space realleges and incorporates by reference the allegations contained in paragraphs 1-164 of this Complaint as if fully set forth herein.

166. The Secretary failed to correct numerous highly prejudicial and plainly erroneous discovery and evidentiary rulings made by the ALJ. Collectively, the ALJ's rulings deprived United Space of due process and violated the APA, 5 U.S.C. § 554(c).

167. With respect to the matters set forth herein, the Final Order is arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to constitutional right, without observance of procedure required by law, and not supported by substantial evidence.

168. Accordingly, Defendants have violated 5 U.S.C. §§ 554 and 706 and the due process clause of the Fifth Amendment.

## COUNT VIII

### Request for Stay of Operation of the Final Order Pending Review

169. United Space realleges and incorporates by reference the allegations contained in paragraphs 1-168 of this Complaint as if fully set forth herein.

170. United Space's primary business is providing all aspects of processing, maintenance and operations for various NASA programs, including the Space Shuttle and International Space Station (ISS) programs.

33

171.    Termination or suspension of United Space's existing government contracts will subject United Space to irreparable harm because it will not be able to stay in business without its federal contracts.

172.    If United Space ceases to operate, thousands of employees will be subject to layoff.

173.    Debarment of United Space from receiving future government contracts will subject United Space to irreparable harm because its primary government contract is winding down based on the completion of the Space Shuttle program.

174.    Without future government contracts, United Space will be forced to lay off a substantial number of workers.

175.    In an attempt to pressure United Space to waive its appellate rights and in violation of the Due Process Clause of the Fifth Amendment, OFCCP's Southeast Regional Office sent letters to a Defense Contract Management Agency ("DCMA") Administrative Contracting Officer, following DCMA's request for a pre-award clearance of United Space initiated by United Space's prime contractor, Alliant Techsystems, Inc., requesting that the Contracting Officer effectively suspend United Space's existing contractors and effectively debar United Space from receiving future contracts and wrote, ". . . we trust that you and the prime contractor are able to prevail upon USA to comply with E.O. 11246 so that we can move forward with your request."  Exhibit 1.

176.    In particular, the day after the ALJ issued his RD&O, OFCCP Director of Program Operations-Southeast Sam Maiden wrote "I would like to take this opportunity to inform you that the Office of Federal Contract Compliance Programs (OFCCP) filed an administrative complaint against USA for noncompliance with Executive Order 11246 at its Cape Canaveral facility. On February 28, 2011, a District Chief Administrative Law Judge

rendered his decision, which was that USA must comply with requests and submit to a desk audit and onsite review. At this time, USA has yet to come into compliance with our regulations." Exhibit 2.

177.    On March 3, 2011, OFCCP Regional Director Evelyn Teague wrote "USA has not abided by the terms of its contract with the federal government." Exhibit 1. "The federal government requires that all federal contractors comply with the E.O. and CFR and currently USA has not done so." *Id.* "Currently, USA has failed to comply with several components of the compliance evaluation . . . . The Office of Federal Contract Compliance Programs sincerely appreciates your assistance in obtaining compliance in this matter." *Id.*

178.    OFCCP's request for suspension and debarment are inconsistent with United Space's record of compliance with Executive Order 11,246 and OFCCP regulations. OFCCP awarded United Space an Exemplary Voluntary Efforts Award in 1999. OFCCP conducted a compliance evaluation of United Space's Cape Canaveral Facility from 2002-2006 and closed the evaluation without any findings of non-compliance. OFCCP also conducted a compliance evaluation of United Space's Houston, TX facility in 2006-2008 and closed that audit without any findings of non-compliance.

179.    OFCCP has not alleged that United Space committed any substantive violation of Executive Order 11,246 or that United Space has engaged in pay discrimination. The Secretary's decision relates entirely to OFCCP's access to requested pay and personnel data.

180.    United Space is entitled to preliminary injunctive relief and a stay of agency action pursuant to Fed. R. Civ. P. 65 and 5 U.S.C. § 705.

## PRAYER FOR RELIEF

WHEREFORE, United Space requests that the Court:

(1)     preliminarily enjoin and stay enforcement of the Secretary's Final Order pursuant

to Fed. R. Civ. P. 65 and 5 U.S.C. § 705, including an order enjoining OFCCP from sending

letters to government agencies or contractors requesting that United Space be effectively

debarred from future contracts or subcontractors or requesting effective suspension of United

Space's existing contracts;

(2)     hold unlawful and set aside the Secretary's Final Order pursuant to 5 U.S.C. § 706

as arbitrary and capricious, an abuse of discretion and not in accordance with law, contrary to

constitutional right, without observance of procedure required by law, and not supported by

substantial evidence; and

(3)     grant Plaintiff such other relief as may be necessary and appropriate or as the

Court deems just and proper.


Date:  April 19, 2011                          Respectfully submitted,

                                               By: _____

                                               Howard M. Radzely, D.C. Bar No. 437957
                                               William E. Doyle, Jr., D.C. Bar No. 498522
                                               Simon J. Torres, D.C. Bar No. 973898
                                               MORGAN, LEWIS & BOCKIUS LLP
                                               1111 Pennsylvania Avenue, NW
                                               Washington, DC  20004
                                               Telephone:   202.739.3000
                                               Facsimile:   202.739.3001

                                               *Attorneys for Plaintiff United Space Alliance, LLC*

36

# EXHIBIT 1

**United States Department of Labor  Office of Federal Contract Compliance Programs**
**Southeast Region**
**61 Forsyth Street SW, Suite 7B75**
**Atlanta, Georgia 30303**

3 March 2011-R

Mr. Shad Golightly (Via E-mail: Shad.Golightly@dcma.mil)
Administrative Contracting Officer/Defense Contract Management Agency
DCMA Space & Missile Systems Division/DCMA NPO ATK Launch Systems
PO Box 524, M/S Z-10/Brigham City, Utah 84302-0524

Dear Mr. Golightly:

Thanks so much for talking with us today and updating us on United Space Alliance, LLC ("USA"). As we discussed, USA has not abided by the terms of its contract with the federal government.

As you may recall, you sent a pre-award request for clearance to the Office of Federal Contract Compliance Programs ("OFCCP") Southwest Region on or about February 16, 2011. This request was transferred to the Southeast Region on February 22, 2011, which is the proper region since the place of performance on contract # NNM07AA75C is in Florida.

As we discussed today, on February 28, 2011, the District Chief Administrative Law Judge ("ALJ") issued a recommended order, which in essence directs USA to comply with OFCCP's previous request pursuant to the Code of Federal Regulations ("CFR") and Executive Order 11246 ("E.O."). The federal government requires that all federal contractors comply with the E.O. and CFR and currently USA has not done so. If you desire, you can access the entire ALJ's order at: http://news.bna.com/dlln/DLLNWB/split_display.adp?fedfid =19877331&vname=dlmotallissues&fn =19877331&id=19877331.

The Federal Acquisition Regulation ("FAR") 22.802(b) states that "no contract or modification involving a new acquisition shall be entered into, and no subcontract shall be approved by a contracting officer, with a person who has been found ineligible by the Deputy Assistant Secretary for reasons of noncompliance with the requirements of E.O. 11246." The ALJ's order recommended that the Administrative Review Board cancel all USA's present federal contracts and debar all future federal contracts until USA is in compliance. Currently, USA has failed to comply with several components of the compliance evaluation, as referenced in the E.O., CFR and FAR 52.222-26.

As we discussed, we trust that you and the prime contractor are able to prevail upon USA to comply with E.O. 11246 so that we can move forward with your request. The Office of Federal Contract Compliance Programs sincerely appreciates your assistance in obtaining compliance in this matter. If you have any questions or require further information, please feel free to contact Sam Maiden at (404)893-4555.

Sincerely,

Evelyn Teague
Regional Director

*Working for America's Workforce*

# EXHIBIT 2

**United States Department of Labor**   **Office of Federal Contract Compliance Programs**
**Southeast Regional Office**
**61 Forsyth Street, SW, Suite 7B75**
**Atlanta, Georgia 30303**



1 March 2011

Mr. Shad D. Golightly, (Via E-mail)
Administrative Contracting Officer
DCMA-NPO ATK Launch Systems
P.O. Box 707, T40
Brigham City, Utah 84302-0707

Re: Pre-Award Clearance Request for United Space Alliance, LLC

Dear Mr. Shad D. Golightly,

We are in receipt of your email regarding the pre-award clearance for United Space Alliance
(USA).

I would like to take this opportunity to inform you that the Office of Federal Contract
Compliance Programs (OFCCP) filed an administrative complaint against USA for non-
compliance with Executive Order 11246 at its Cape Canaveral facility. On February 28, 2011, a
District Chief Administrative Law Judge rendered his decision, which was that USA must
comply with requests and submit to a desk audit and onsite review. At this time, USA has yet to
come into compliance with our regulations.

If you need anything further I can be reached at 404-893-4545.

Sincerely,

Sam Maiden
Director, Program Operations-Southeast
Office of Federal Contract Compliance

*Working for America's Workforce*